# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LEROY GRAYSON and ALVIN McKENZIE, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br>vs.<br><br><br>7-ELEVEN, INC., a Texas Corporation, and DOES 1 through 100, inclusive,<br><br>Defendant. | CASE NO. 09CV1353-MMA (WMc)<br><br>**ORDER GRANTING PLAINTIFFS' MOTION FOR CERTIFICATION OF CLASS ACTION**<br><br>[Doc. No. 47] |

Currently before the Court is Plaintiffs Leroy Grayson and Alvin McKenzie's Motion for Certification of Class Action. [Doc. No. 47.] Plaintiffs seek certification from the Court that this action is maintainable as a class action under Rule 23(b)(3) of the Federal Rules of Civil Procedure. Plaintiffs also request certification as the representatives of the plaintiff class and their counsel, as counsel for the plaintiff class. Defendant 7-Eleven, Inc., does not oppose the motion. For the following reasons, the Court **GRANTS** Plaintiffs' motion.

## BACKGROUND

*1. Factual Background*

This purported class action was brought by two former 7-Eleven store franchisees, on behalf of a statewide class of former 7-Eleven franchisees, against their former franchisor, 7-Eleven, Inc., seeking to recover federal excise tax refunds that 7-Eleven collected from the U.S.

1 | Treasury since late 2008.

2 | According to Plaintiffs, starting in approximately July 2000, the federal government collected excise taxes on all pre-paid long distance telephone cards sold to the general public. Franchisees operating 7-Eleven stores sold pre-paid long distance telephone cards and the full cost was built into the "cost of goods." Once the franchisees sold the cards, the franchisor/franchisee split the profit margin according to their Franchise Agreement. The excise tax cut into the profit margin because the franchisor and franchisee would have made a greater profit on the calling cards if the excise tax was not built into their cost. As a result, the franchisees' share of the tax was essentially split with 7-Eleven based on the profit margin.

In July 2006, the federal government stopped collecting the excise tax and thereafter the U.S. Treasury authorized a refund of the excise taxes collected from July 2000 through July 2006. When the federal government began issuing refunds, 7-Eleven collected the refunds for all current and former franchisees. 7-Eleven issued credits for the excise tax refund to all current franchisees, but did not return the refund to store owners who paid the excise tax but terminated their franchises prior to September 2007.

Plaintiff Grayson owned his 7-Eleven franchise between 1987 and November 2004. Plaintiff McKenzie was a franchisee owner from May 1992 until September 1, 2005. Both were subject to the federal government's excise tax and paid their share of the tax levied against pre-paid long distance phone cards from July 2000 until they terminated their franchise agreements with 7-Eleven. Based on 7-Eleven's accounting records, Plaintiffs allege Grayson is owed approximately $23,600 and McKenzie is owed $16,600. Plaintiffs believe there are over 1,300 nationwide former franchisees that are potentially eligible for the federal excise tax refund, of which 293 are based in California.

### 2. *Procedural Background*

Plaintiffs brought this action against Defendant on June 23, 2009 [Doc. No. 1] and Plaintiffs filed the operative First Amended Complaint ("FAC") on August 10, 2009. [Doc. No. 10.] The FAC asserts three causes of action: (1) conversion; (2) common counts – money had and received; and (3) breach of implied contract. [*Id*.] Defendant filed an answer on August 28, 2009.

1  [Doc. No. 12.] On July 21, 2010, the parties submitted a joint motion stipulating to class
2  certification of a nationwide class under Federal Rule of Civil Procedure 23 [Doc. No. 24], which
3  the Court granted. [Doc. No. 25.] Subsequently, the parties filed cross-motions for summary
4  judgment. [Doc. Nos 31, 32.] Upon review of the parties' summary judgment pleadings, the
5  Court concluded that decertification of the nationwide class was necessary and vacated its prior
6  order without prejudice to Plaintiffs renewing the motion for certification of a redefined class.
7  [Doc. No. 42.] In response, Plaintiffs filed the pending motion for class certification pursuant to
8  Federal Rule of Civil Procedure 23. [Doc. No. 47.] Defendant does not oppose the motion.

### DISCUSSION

10  *1.    Legal Standard*

11  The party seeking certification bears the burden of showing that each of the four
12  requirements of Rule 23(a) and at least one requirement of Rule 23(b) have been met. *Ellis v.*
13  *Costco Wholesale Corp.*, 657 F.3d 970, 979-980 (9th Cir. 2011). Rule 23(a) requires parties
14  seeking class certification to establish: (1) that the class is so large that joinder of all members is
15  impracticable (numerosity); (2) that there are one or more questions of law or fact common to the
16  class (commonality); (3) that the named parties' claims are typical of the class (typicality); and (4)
17  that the class representatives will fairly and adequately protect the interests of other members of
18  the class (adequacy of representation). FED. R. CIV. P. 23(a).

19  The United States Supreme Court requires district courts to engage in a "rigorous analysis"
20  of each Rule 23(a) factor when determining whether plaintiffs seeking class certification have met
21  the requirements of Rule 23. *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2551, 180 L. Ed. 2d
22  374 (2011). In many cases, "that 'rigorous analysis' will entail some overlap with the merits of
23  the plaintiff's underlying claim. That cannot be helped." *Id*.
24  / / /
25  / / /
26  / / /
27  / / /
28  / / /

*2.     Analysis*

    **i)     Proposed Class**

Plaintiffs propose the following definition for a plaintiff class:

> All former franchisees of Defendant 7-Eleven, Inc., located in the state of California who (1) paid a portion of the federal excise tax levied against pre-paid long distance telephone cards sold to the public from July 2000 through July 2006; (2) terminated their franchise agreements with 7-Eleven at any time between July 2000 to September 2007; and (3) for whom 7-Eleven has not paid their pro-rata portion of the excise tax refund as of December 8, 2008.

The proposed class consists of readily ascertainable persons and or entities who operated 7-Eleven franchise stores in California during the relevant time period indicated by the purported class definition.

    **ii)     Rule 23(a) Factors**

        a)     <u>Numerosity</u>

Under the first Rule 23(a) factor, the class must be "so numerous that joinder of all members is impracticable." FED. R. CIV. P. 23(a)(1). Here, according to Defendant's records, there are approximately 293 franchisees in the purported California-only class. The alleged amount of the refund at issue is $710,967, with the average claim being approximately $2,426, the highest claim being $32,609, and the lowest being just a few dollars. The purported class is sufficiently numerous that joinder of all members would be impracticable. Furthermore, given the relatively small size of the alleged claims, class action would be more efficient than 293 individual lawsuits.

        b)     <u>Commonality</u>

To show commonality, Plaintiffs must demonstrate that there are questions of fact and law that are common to the class. FED. R. CIV. P. 23(a)(2). "The requirements of Rule 23(a)(2) have been construed permissively, and [a]ll questions of fact and law need not be common to satisfy the rule. *Ellis*, 657 F.3d at 981 (quoting *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019 (9th Cir. 1998) (internal quotations omitted). "The Supreme Court has recently emphasized that commonality requires that the class members' claims depend upon a common contention such that determination of its truth or falsity will resolve an issue that is central to the validity of each

[claim] in one stroke." *Mazza v. Am. Honda Motor Co.*, 666 F.3d 581 (9th Cir. Cal. 2012) (quoting *Wal-Mart*, 131 S. Ct. at 2551) (internal quotations omitted). Plaintiffs must demonstrate "the capacity of classwide proceedings to generate common answers" to common questions of law or fact that are "apt to drive the resolution of the litigation." *Id*.

Here, the class is united in its interests with respect to proof of the following common factual and legal issues:

### Common Questions of Fact

(1) Whether 7-Eleven wrongfully converted the U.S. Treasury's refund of improperly collected "excise taxes" that were attributable to sales of pre-paid phone cards sold by former franchisee class members from July 2000 through July 2006;

(2) Whether 7-Eleven collected monies in the amount of approximately $4.24 million from the U.S. Treasury in 2008, from which approximately 50% was the property of former franchisee class members, who made claim for and for which Defendant did not deliver; and

(3) Whether 7-Eleven acted as a "gratuitous agent" by seeking 100% of a U.S. Treasury refund of excise taxes levied on sales of pre-paid long-distance telephone cards for former franchisee class members for monies that Defendant knew that at least 50% of the recovery was the property of former franchisee class members that no longer had a legal relationship with 7-Eleven.

### Common Questions of Law

(1) Whether 7-Eleven's failure to return former franchisee class members their pro-rata portion excise tax payments made and collected despite a demand to do so constitutes the tort of conversion as a matter of law;

(2) Whether 7-Eleven's obtaining of monies that were not its property from the U.S. Treasury as part of a excise tax refund and failing to return said monies upon demand of former franchisee class members renders Defendant liable for damages on common counts;

(3) Whether 7-Eleven breached an implied equitable contract; and

(4) Whether 7-Eleven's standard "Franchise Termination and Release Agreements" cover conduct and activity subsequent to the date of the release.

The determination of these issues will resolve the central disputes in this litigation "in one stroke" – mainly whether 7-Eleven wronfully converted funds that rightfully belonged to the putative class members. Accordingly, these common questions of fact and law satisfy the commonality requirement for class certification.

### c) Typicality

To demonstrate typicality, Plaintiffs must show that the named parties' claims are typical of the class. FED. R. CIV. P. 23(a)(3). "The purpose of the typicality requirement is to assure that the interest of the named representative aligns with the interests of the class." *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992). "Typicality refers to the nature of the claim or defense of the class representative, and not to the specific facts from which it arose or the relief sought." *Id.* (internal citations and quotations omitted). "The test of typicality 'is whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct.'" *Ellis*, 657 F.3d at 984 (quoting *Hanon*, 976 F.2d at 508).

Here, the claims of Grayson and McKenzie for refunds due are typical of any former franchisee who was subject to the tax, but who terminated their franchise before the government issued refunds. Furthermore, the purported class representatives have a strong interest in pursuing the case since they stand to recover a large proportion of the award sought.

### d) Adequate Representation

The named Plaintiffs must fairly and adequately protect the interests of the class. FED. R. CIV. P. 23(a)(4). This factor requires: (1) that the proposed representative Plaintiff does not have conflicts of interest with the proposed class, and (2) that Plaintiff is represented by qualified and competent counsel. *See Hanlon*, 150 F.3d at 1020. "Adequate representation depends on, among other factors, an absence of antagonism between representatives and absentees, and a sharing of interest between representatives and absentees. *Ellis*, 657 F.3d at 985 (citations omitted).

Here, the proposed class representatives have suffered the precise nature of harm as the putative class members they seek to represent. Furthermore, there is no evidence of conflict or antagonism between the proposed class representatives, their attorneys, and the putative class.

Additionally, Plaintiffs' attorneys are experienced class action litigators and their practice is devoted almost exclusively to the prosecution of class actions. As such, it does not appear that the proposed class representatives have any conflicts of interest with the proposed class, and Plaintiffs appear to be represented by qualified and competent counsel.

### iii) Rule 23(b) Factors

Plaintiffs must also satisfy one of Rule 23(b)'s provisions. The provision at issue here is Rule 23(b)(3), which requires that "questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." FED. R. CIV. PRO. 23(b)(3). "There is clear justification for handling the dispute on a representative rather than an individual basis" if "common questions present a significant aspect of the case and they can be resolved for all members of the class in a single adjudication . . . ." *Mazza*, 666 F.3d at 589 (citing *Hanlon*, 150 F.3d at 1022).

#### a) Superiority

Under Rule 23(b)(3), the court must evaluate whether a class action is superior by examining four factors: (A) the class members' interests in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun by or against class members; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the likely difficulties in managing a class action. FED. R. CIV. P. 23(b)(3). "Accordingly, the Court must compare the merits of proceeding as a class action under Rule 23, against alternative methods of resolving the dispute." *Edwards v. City of Long Beach*, 467 F.Supp.2d 986, 992 (C.D. Cal. 2006) (citing *Hanlon*, 150 F.3d at 1023. On balance, these factors weigh in favor of certification.

Here, class action procedure is a superior procedural device for the resolution of these claims which will, among other things, avoid repetitious and multiple litigation, and avoid the risk of inconsistent adjudications or of establishing varying or inconsistent standards of conduct. The value of individual claims also make class certification desirable as it does not appear that such individual actions would be viable to pursue in the event the claims made are meritorious. Class

action procedures available under Rule 23 will benefit the court system and the affected parties, and will enable the simultaneous resolution of many individual claims.

      b)     Predominance

"The Rule 23(b)(3) predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 623 (1997). The focus is on 'the relationship between the common and individual issues.'" *Mevorah v. Wells Fargo Home Mortg.* (*In re Wells Fargo Home Mortg. Overtime Pay Litig.*), 571 F.3d 953, 957 (9th Cir. 2009) (internal citation omitted). "When common questions present a significant aspect of the case and they can be resolved for all members of the class in a single adjudication, there is clear justification for handling the dispute on a representative rather than on an individual basis." *Hanlon*, 150 F.3d at 1022.

Here, the predominance requirement is satisfied as to the proposed class because "common questions represent a significant aspect of the case." *Id.* (quotation omitted). The overarching question in this litigation is who has a greater claim to the refund; the former franchisees or 7-Eleven. This determination should be universal for all former franchisees. As such, it would be far more efficient and equitable to make this determination in a single class action rather than in 293 individual lawsuits.

## CONCLUSION

For the reasons set forth above, the Court finds the proposed class satisfies the requirements for class certification pursuant to Rule 23(b)(3). Accordingly, the Court **GRANTS** Plaintiffs' motion for class certification.

**IT IS SO ORDERED**.

DATED: March 28, 2012

                                        Hon. Michael M. Anello
                                        United States District Judge